IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MALIK,<br>No. K64407,<br><br>        Plaintiff,<br><br>vs.<br><br>MD WILLIAM RANKIN, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 15-cv-00084-SMY |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Robert Malik, an inmate currently housed in Big Muddy River Correctional Center within this judicial district, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. He contends he has been denied proper medical care for multiple medical ailments since December 2011, when he entered the Illinois Department of Corrections ("IDOC"), and continuing to the present. The allegations pertain to five different prisons. Although the complaint does not specifically seek a temporary injunction, injunctive relief is requested, and a separate motion for a temporary restraining order and a preliminary injunction was filed along with the complaint (Doc. 2).

Pursuant to 28 U.S.C. § 1915A, the complaint must undergo preliminary review to ensure that a colorable claim has been stated. That review will occur in due course, but because a temporary injunction is sought, the Court will immediately take up the motion for a temporary restraining order and/or preliminary injunction (Doc. 2).

## The Complaint

In order to analyze whether injunctive relief is warranted at this early juncture, the underlying factual allegations will be summarized and certain problems with the complaint must be noted.

Upon conviction and transfer to the custody of the IDOC, Plaintiff was sent to Stateville Correctional Center in the Northern District of Illinois on December 6, 2011. Plaintiff disclosed his medical history, which included having bullet fragments in his right ankle since 2009. He immediately sought medical care for pain, elevated blood pressure, headaches, stomach pain, sweaty palms, an irregular feeling in his bladder, and right ankle pain. Before being afforded any treatment, Plaintiff was transferred to East Moline Correctional Center in the Central District of Illinois.

Upon arrival at East Moline, Plaintiff was sought medical attention for his ailments, particularly his gastrointestinal and ankle issues. A physician opined that Plaintiff was exaggerating his concerns, but noted that Plaintiff could have a hernia or infection. Plaintiff developed severe constipation, hemorrhoids and abdominal pain, and he had blood in his stool, so he sought further treatment in March 2012. After only verbal questioning, the doctor told Plaintiff he would be fine and no treatment was offered. Plaintiff's condition worsened during the following six months, but he was not afforded any treatment; rather, he was repeatedly told he was fine. In mid-September 2012 emergency treatment was sought. Plaintiff's bladder had to be catheterized, and he was diagnosed with a bladder infection. The doctor asked Plaintiff when he was getting out of prison and then prescribed an ineffective medication. Even after filing administrative grievances, Plaintiff did not receive any effective treatment. A nurse described

Plaintiff's condition as "chronic" and "serious," and further opined that the doctor may not have afforded proper treatment.

In February 2013, Plaintiff was transferred to Jacksonville Correctional Center in the Central District of Illinois. Again, he immediately and repeatedly sought effective medical treatment. His mother, brother and sister even began writing and calling prison officials and the corporation that provides medical services for the IDOC—all to no avail. Plaintiff's ailments worsened. His left testicle swelled to the size of tennis ball, and puss began oozing from the scar over the bullet fragments in his ankle. Again, medical personnel asked when Plaintiff would be released from prison, as though that dictated treatment decisions. No efficacious medical treatment was offered. Instead, Plaintiff was evaluated by a psychologist who diagnosed Plaintiff as having an adjustment disorder with anxiety, and could not rule out anxiety somatization (mental illness causing real physical symptoms, often leading to a vicious cycle of concern and dissatisfaction with a lack of medical treatment, and escalating anxiety (*see* www.webmd.com/mental-health/somatoform-disorders)).

In December 2013, Plaintiff was transferred to Vandalia Correctional Center in the Southern District of Illinois. Plaintiff sought immediate treatment for his ailments. The physician who initially examined Plaintiff at Vandalia was rude and rushed, and he tossed Plaintiff out of the health care unit. Nevertheless, Plaintiff's ankle was x-rayed two days later. Upon follow-up, the physician said he had spoken with the physician at Jacksonville. Again, Plaintiff was not offered any treatment for his ailments. According to Plaintiff, even correctional officers noticed swelling and discoloration in his ankle, which was not acknowledged by medical personnel.

In January 2014, Plaintiff went on a hunger strike in order to secure proper diagnosis and treatment, and the return of a confiscated electronic device. The warden told Plaintiff to file grievances. The warden also said he would speak to the prison doctor, but thought it was not likely to do any good because "they" did not want to spend any money to treat Plaintiff. Other correctional officers expressed a similar view that Plaintiff would not receive proper medical treatment until he was released from prison. As the hunger strike stretch on, Plaintiff was placed in an isolation cell and shackled to the bed, which only exacerbated Plaintiff's ankle injury. (When the hunger strike ended is unclear).

In February 2014, Plaintiff was transferred to Big Muddy River Correctional Center in the Southern District of Illinois. He immediately sought medical care. The nurse who examined Plaintiff upon intake noted edema and possible infection in Plaintiff's right ankle, caused by the bullet fragments. Plaintiff went unseen by a physician, and the warden walked off when Plaintiff attempted to explain his need for help. A nurse did prescribe ibuprofen, which was ineffective. Plaintiff filed an emergency grievance, but his situation was not considered an emergency and he consequently received a disciplinary report—which he thinks was designed to intimidate him into giving up his quest for proper diagnosis and treatment.

Plaintiff was finally seen by a doctor in March 2014, and blood work was ordered. Plaintiff perceived that the doctor was attempting a cover-up, so he filed a grievance. The doctor failed to see Plaintiff in a week, as promised. Although a nurse explained that the doctor was running behind schedule, Plaintiff filed another grievance. The doctor eventually informed Plaintiff that the blood work was all normal and that there was no infection. Acetaminophen was prescribed, but was ineffective. Another grievance was filed.

In April 2014, over Plaintiff's objection, physical therapy was prescribed for Plaintiff's ankle pain. The therapist thought that massage would impact the golf ball-sized cyst on Plaintiff's ankle, but it only caused pain and opened the scar so that puss was oozing out. Eventually, physical therapy was discontinued and an ultrasound was ordered.

Plaintiff's leg—from the knee to the ankle—was scanned, as well as his groin and testicles. The ultrasound examination did not reveal any problems. Plaintiff asserts that the wrong tests are being run.

Plaintiff brings suit against 14 named defendants: Wexford Health Sources, Inc.; seven medical professionals, and six prison administrators. He contends the defendants have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. A preliminary injunction is requested in the complaint—examination and treatment by a neutral outside specialist. Compensatory and punitive damages are also sought.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Physicians, however, are entitled to deference in treatment decisions "unless no minimally competent professional would have so responded under similar circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir.2008); *see Duckworth v. Ahmad,* 532 F.3d 675, 682 (7th Cir.

2008).  As a general matter, the Court perceives that the complaint presents colorable Eighth Amendment claims regarding deliberate indifference to serious medical needs.

Plaintiff himself recognizes two glaring issues:  (1) the complaint presents claims stemming from how he was treated (or not treated) at multiple institutions, not all within the Southern District of Illinois where this Court is located; and (2) a two-year statute of limitations is applicable to his claims, some of which occurred as long as three years ago.  He has filed a "Motion to Consolidate Jurisdiction in Southern District of Illinois" (Doc. 4).   This motion will be addressed later in connection with the Section 1915A preliminary review of the complaint.  Because the claims stemming from Vandalia Correctional Center and Big Muddy River Correctional Center arose within the Southern District, and with Plaintiff currently being incarcerated in this judicial district, severance and the statute of limitations do not prevent the Court from considering whether a temporary restraining order is warranted.

## Motion for Temporary Restraining Order and Preliminary Injunction

Plaintiff Malik seeks a temporary restraining order and preliminary injunction (Doc. 2).  He submits a memorandum in support of his motion (Doc. 3).  He reiterates his desire for a neutral outside medical evaluation and treatment.  He states that he is in extreme pain and that his ankle remains swollen and discolored.  He fears losing his leg (as he has for several years).  He contends that an MRI and CT scan are necessary, but prison officials have placed cost-savings over proper diagnosis and care.

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days.  FED. R. CIV. P. 65(b)(2).  A TRO may issue without notice *only* if:

> (A)   specific facts in an affidavit or a verified complaint *clearly* show that *immediate and irreparable injury, loss, or damage* will result to the movant

>before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1) (emphasis added). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

A preliminary injunction, unlike a TRO under Rule 65(b), is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED.R.CIV.P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).

The complaint appears to present colorable Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs that are occurring at Big Muddy River Correctional Center where Plaintiff is presently incarcerated. The Court is even willing to accept at this early juncture that there is a real and proximate threat of serious physical injury. However, the bar for a TRO is high. A TRO may issue without notice only if there is a clear showing that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition. FED.R.CIV.P. 65(b)(1)(A). Plaintiff is seeking a different course of treatment—a change in the *status quo*. Considering the complaint, motion and supporting memorandum, the Court concludes that Plaintiff has failed to clearly show a substantial risk of serious injury that is reasonable likely to ripen into actual harm before the defendants can be heard. Therefore, the extraordinary step of issuing a TRO is not warranted.

Insofar as Plaintiff also seeks a preliminary injunction, the Court will expedite the section 1915A preliminary review of the complaint. Even if severance and transfer of some of Plaintiff's claims are ordered in accordance with *George v. Smith,* 507 F.3d 605 (7th Cir. 2007), it appears that the motion for preliminary injunction could proceed in a timely fashion in keeping with *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680 (7th Cir. 2012). Plaintiff's motion for preliminary injunction will, therefore, be addressed at a later date, after the Section 1915A preliminary review of the complaint and severance concerns are addressed.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion for temporary restraining order and preliminary injunction (Doc. 2) is **DENIED IN PART AND DEFERRED IN PART**: the request for a temporary restraining order is **DENIED**; ruling on the request for preliminary injunction is **DEFERRED** until the preliminary review of the complaint pursuant to 28 U.S.C. § 1915A is completed.

**IT IS SO ORDERED.**

**DATED: January 29, 2015**

        s/ STACI M. YANDLE
        **United States District Judge**